IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY SULTON, | Case No. 1:15-cv-09826 |
| Plaintiff, | Judge: |
| vs. | Magistrate Judge: |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; and TRINITY HEALTH CORPORATION WELFARE BENEFIT PLAN, | |
| Defendants. | |

**COMPLAINT FOR LONG TERM DISABILITY BENEFITS DUE AND DECLARATION OF RIGHTS UNDER THE PLAN**
**29 U.S.C. § 1132(a)(1)(B)**

Now comes the Plaintiff, LARRY SULTON, by his attorneys, MICHAEL BARTOLIC and REBECCA K. BRYANT of THE LAW OFFICES OF MICHAEL BARTOLIC, LLC, and complaining against the Defendants, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY and the TRINITY HEALTH CORPORATION WELFARE BENEFIT PLAN he states:

**NATURE OF THE ACTION**

1. This is an ERISA case seeking long-term disability insurance benefits where an insurer inappropriately relied upon opinions of non-examining medical consultants in evaluating a psychiatric disability claim despite courts repeatedly rejecting insurers' reliance on such opinions in psychiatric disability claims. The insurer relied on these opinions over that of a treating psychiatrist without any explanation for doing so, despite failing to equip the consultants with all available records, and the consultants misrepresenting the contents of the medical records. The insurer further erred by assuming Plaintiff's occupation required only an 8-hour

work day, despite the insurance policy expressly stating that working the required number of hours is an Essential Duty, as defined in the policy.

2. Unsurprisingly, the insurer decided Plaintiff can still perform his own occupation—a highly competitive and intellectually demanding occupation as a medical school dean—while the Social Security Administration ("SSA") found Plaintiff to be totally disabled from *any* work. It likewise came as no surprise the insurer made no attempt to explain how it could have reached an opposite conclusion despite ERISA jurisprudence requiring such an explanation.

3. This action is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking benefits due pursuant to the terms of an employee benefit plan. Plaintiff also seeks reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## JURISDICTION AND VENUE

4. Jurisdiction of the Court is based upon ERISA, and in particular, 29 U.S.C. § 1132(e)(1) and § 1132(f). Those provisions give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

5. The ERISA statute provides a mechanism for administrative or internal appeal of benefit denials at 29 U.S.C. § 1133. Those avenues of appeal have been exhausted.

6. An ERISA action may be brought in the federal judicial district where a plan is administered, where the alleged ERISA breach took place, or where a defendant resides or may be found. The breach occurred where the Plaintiff worked in Cook County, within the Northern District of Illinois. Venue is proper in the United States District Court for the Northern District of Illinois. 29 U.S.C. § 1132(e)(2).

## THE PARTIES

7. Plaintiff, Dr. LARRY SULTON, Ph.D. (hereinafter "Dr. Sulton" or "Plaintiff"), is a former employee of Loyola University Medical Center (hereinafter "Loyola").

8. Defendant, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY (hereinafter "Hartford") insurers the Plan through a Group Insurance Policy, policy number GLT696981. (Exhibit #1). Hartford is the claim review fiduciary of the Plan and is responsible for paying the benefits under the insurance policy. Hartford denied Dr. Sulton's claim for LTD benefits and his appeal of that denial. By virtue of its role as both payor of benefits and a decision maker with regard to benefit eligibility, Hartford suffers from a structural conflict of interest that infected its decision-making with respect to Dr. Sulton's claim for benefits.

9. Defendant, TRINITY HEALTH CORPORATION WELFARE BENEFIT PLAN (hereinafter "the Plan"), is an employee welfare plan within the meaning of 29 U.S.C. § 1002(1), which provides long-term disability benefits for employees of the Loyola University Medical Center. Loyola is owned and operated by Michigan-based health system, Trinity Health Corporation. Trinity Health Corporation Welfare Benefit Plan Effective 01/01/2010, Participating Member in the Trustees of the Healthcare Benefits Alliance Trust is the Employer/Sponsor of the Trinity Health Corporation Welfare Benefit Plan. Incident to his employment at Loyola, Dr. Sulton received coverage under the Plan as a participant, as defined by 29 U.S.C. § 1002(7). This claim relates to benefits under the Plan.

## STATEMENT OF FACTS

10. Dr. Sulton was a participant under the Plan. As a participant, he was entitled to the benefits set forth in the Plan.

11. The Plan defines **Disability** or **Disabled** as:

3

> You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-Disability Earnings; and
> 3) after that, Any Occupation.

(Exhibit #1).

12. The Plan defines **Essential Duty** as a duty that:

> 1) is substantial, not incidental;
> 2) is fundamental or inherent to the occupation; and
> 3) cannot be reasonably omitted or changed.
>
> Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty.

(*Id.*).

13. Dr. Sulton is a 58 year-old man, who was employed by Loyola as "Executive Director, Graduate Medical Education/DIO at Loyola University Medical Center, Associate Dean, Graduate Medical Education Loyola University Stritch School of Medicine" (hereinafter "Director/Dean").

14. Dr. Sulton's high ranking position within the medical school placed extraordinary demands on him, including but not limited to the following duties:

1. close interaction with coworkers/supervisors;
2. governing the graduate medical education programs;
3. leading/participating in multiple institutional committees;
4. maintaining strong relationships with various personnel;
5. being able to effectively deal with "urgent" or "crisis" situations;
6. possessing excellent communication skills; and
7. frequent public contact.

15. Dr. Sulton worked as a medical school Director/Dean at Loyola until April 4, 2014, when he ceased working due to symptoms from his psychiatric conditions of Anxiety Disorder and Major Depressive Disorder, and Mild Social Anxiety Disorder with Social Phobia.

16. Dr. Sulton had intermittently struggled with symptoms of his mental illnesses, but for the majority of his career, he managed his mental illnesses with psychotherapy and medication.

17. Due to the anxiety and depression, in 2013 Dr. Sulton began feeling increased emotional burdens, starting to have extreme anxiety about adequately performing his work, starting to lose his ability to acknowledge his own success in his position, and fearing presentations and public speaking engagements. Dr. Sulton underwent frequent psychotherapy sessions and treatment with his treating psychiatrist, Dr. Francis Keating, D.O., supplemented by anti-anxiety and anti-depressant medications.

18. By April 2014, Dr. Sulton's symptoms spun out of his control and Dr. Keating observed that Dr. Sulton was specifically impaired from performing most of his occupational duties on a consistent basis in a competitive atmosphere.

19. Dr. Sulton's mental conditions caused an inability to focus and concentrate on meaningful tasks, loss of interest, suspicion and outrage towards others, paralyzing anxiety, inability to render decisions or appropriately interact with other employees, excessive fatigue, decreased motivation, and an inability to cope with routine work stressors.

20. Additionally, Dr. Keating assessed that Dr. Sulton had "minimal ability" to perform basic task management and exhibit emotional control.

21. Dr. Sulton stopped working in April 2014, but his conditions showed no meaningful or lasting improvement. Dr. Keating supported Dr. Sulton's indefinite medical leave from work, concluding that Dr. Sulton would not be able to perform the duties of Director/Dean.

22.     The insurance policy entitles Hartford to have Dr. Sulton examined by a physician of its choice while evaluating his claim for disability benefits. (Exhibit #1).

23.     Instead, Hartford opted to utilize medical consultants who would not examine Dr. Sulton, limiting the consultants to reviewing files and telephoning the treating physician.

24.     Hartford's non-examining medical consultants never met, spoke with, or even saw Dr. Sulton (on video or in person).

25.     Hartford only supplied one of its consultants with medical records from January 2010 through May 8, 2013 (before Dr. Sulton became disabled), despite having records dated through late 2014.

26.     Not surprisingly, the medical consultant characterized Dr. Sulton's symptoms as "mild severity", as used in the DSM, though Dr. Keating's records elevate the symptoms to "recurrent" and "moderate."

27.     On January 26, 2015, Hartford denied Dr. Sulton's claim for LTD benefits.

28.     In denying Dr. Sulton's claim for LTD benefits, Hartford relied on its medical consultant's opinion without any explanation for discrediting Dr. Keating's opinion, despite it being based on more current information. Hartford also only considered whether Dr. Sulton could work an 8-hour day, without performing any analysis as to what the Essential Duties of a medical school dean include (e.g., whether one must work in excess of 40 hours per week).

29.     On May 22, 2015, Dr. Sulton timely appealed Hartford's denial of benefits.

30.     After the denial, Dr. Sulton submitted extensive up-to-date psychotherapy medical reports, Attending Physician Statements, mental status exam records, and a Physical Impairment Questionnaire completed by his treating physician, Dr. Keating.

31. Dr. Keating reported that Dr. Sulton's mental disposition had declined since he had started treating Dr. Sulton and Dr. Sulton's mental conditions continued to interrupt his functional ability.

32. Dr. Keating also observed growing self-destructive tendencies, loss of concentration, and loss of self-worth, and self-deprecation as Dr. Sulton struggled to find purpose in his life. He began to wax and wane in his diligence for managing his physical health.

33. While pursuing LTD benefits, pursuant to the requirements of the insurance policy, Dr. Sulton also made a claim for Disability Income Benefits to the Social Security Administration (hereinafter "SSA").

34. SSA awarded Dr. Sulton disability benefits finding him totally disabled, which included an express finding that he could neither perform his prior work as Director/Dean nor could he adjust to any other type of gainful work.

35. SSA found that Dr. Sulton had many skills, but none of his skills were transferable because he could no longer deal with people, direct others, control or plan activities, or be in larger groups.

36. SSA determined that non-objective evidence of Dr. Sulton's impairment was credible after analyzing his activities of daily living and on the basis of the location, duration, frequency, and intensity of his symptoms.

37. Dr. Sulton provided his SSA award of benefits letter to Hartford along with his entire SSA claim file for its review.

38. Hartford retained another psychiatric consultant to review records in connection with Dr. Sulton's appeal, who likewise never personally examined Dr. Sulton.

39. Despite having up-to-date records, Hartford only equipped its consultant with records through September 30, 2014.

40. Without the full file of records, the consultant unsurprisingly materially misstated what medications Dr. Sulton had been prescribed and the amounts thereof, upon which she based her opinion that the medication treatment was not reflective of the severity of symptoms Dr. Sulton described.

41. Additionally, Hartford withheld the description of Dr. Sulton's occupational duties from the medical consultant. After the medical consultant baldly asserted the evidence did not indicate Dr. Sulton would be precluded from performing any such duties, Hartford made no attempt to supply the occupational information to the consultant before relying upon it.

42. On July 29, 2015, despite the SSA's award of benefits, and Hartford having the entire SSA file to decipher how SSA arrived at the conclusion Dr. Sulton is disabled from all substantial gainful activity, Hartford upheld its determination that Dr. Sulton could still work as a Director/Dean of a medical school, without even attempting to reconcile the SSA award with its polar opposite conclusion.

43. The July 29, 2015 determination constituted a final administrative denial, thereby exhausting the administrative remedies under the Plan's terms.

44. Hartford failed to fully and fairly determine whether Dr. Sulton could perform his own occupation and its denial of Dr. Sulton's LTD benefits was contrary to the terms of the Plan.

45. Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary may bring a civil action to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights under the terms of the plan.

8

46. As a direct and proximate result of Hartford's denial of Dr. Sulton's claim for benefits, there has been created a case of actual controversy by and between the parties.

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against Hartford and the Plan, and award Plaintiff all past due benefits and declare Plaintiff's right to reinstatement of benefits in the amount equal to the contractual amount of benefits to which he is entitled prospectively;

B. That the Court order the Defendants to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

C. That the Court award Plaintiff his attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of the suit; and

D. That the Plaintiff recovers any and all other relief to which he may be entitled.

Respectfully Submitted,

Dated November 3, 2015              By:     /s Rebecca K. Bryant
                                            One of the Attorneys for the Plaintiff

Michael Bartolic
Rebecca K. Bryant
The Law Offices of Michael Bartolic, LLC
208 S. LaSalle Street
Suite 1420
Chicago, Illinois  60604
Tel: 312-635-1600
Fax: 312-635-1601
mbartolic@michaelbartolic.com
rbryant@michaelbartolic.com